Wilkins *v.* The State.

No. 14,211.

## WILKINS *v.* THE STATE.

DENTISTRY.—*Act to Regulate Practice of, Constitutional.*—The act of March 7th, 1887, to regulate the practice of dentistry, prescribing what qualifications a person who enters upon the practice of that profession shall possess, and providing for the issuing of certificates to applicants by a board of examiners, is constitutional and valid.

SAME.—*Judicial Knowledge.*—The courts will take judicial knowledge that the dental profession is one requiring skill, and that an unskilled person may injure one who employs him, and this being so, the Legislature may prescribe the qualifications of those permitted to practice that profession.

SAME.—*Legislative Power.—Wisdom and Expediency of Act.*—The Legislature having plenary power over the whole subject, it alone must be the judge as to what is wise and expedient, both as to the qualifications required and as to the method of ascertaining those qualifications, and so long as it keeps within the Constitution, the courts can exercise no supervisory power.

SAME.—*Corporation.—Creation by Special Act.*—The provision delegating to the Indiana Dental Association the naked power to name three members of the board of examiners, provided for in said act, is not a grant of corporate power, and hence is not a violation of the constitutional provision forbidding the creation of corporations by special act.

SAME.—*Board of Examiners.—Judicial Functions.*—While the board of examiners in some degree acts judicially, it performs no judicial duty within the meaning of the Constitution, and, therefore, the act is not invalid because it does not make such provisions as would be necessary if the examiners constituted a judicial tribunal.

SAME.—*Time and Place of Meeting of Board.—Notice.—Prosecution for Practicing Without License.*—The time and place of meeting of the board of examiners are to be fixed by the persons whom the law has vested with authority, and one who desires a license must make reasonable inquiry, and if he fails to do so, he can not defend a prosecution for practicing without a license on the ground that no notice of the meeting of the board had been given him.

SAME.—*Statute Invalid in Part.*—A part of a statute may be declared invalid, yet if enough remains to constitute a complete statute, the latter may be enforced.

From the Grant Circuit Court.

*H. Brownlee* and *W. H. Carroll*, for appellant.

*L. T. Michener*, Attorney General, *J. H. Gillett, S. W. Cantwell* and *H. J. Paulus*, for the State.

ELLIOTT, J.—The indictment upon which is founded the judgment from which this appeal is prosecuted, charges that the appellant did practice the profession of dentistry without having obtained a certificate from the board of examiners established under the act of March 7th, 1887, Acts of 1887, p. 58.

There is entire harmony in the adjudged cases upon the question of the power of the Legislature to enact laws prescribing what qualifications a person shall possess who enters upon the practice of a profession requiring professional skill and learning. From the earliest years of the common law, men who engaged in the practice of the profession of law and medicine were required to possess skill and learning, and to obtain evidence of their qualification from the sources designated by law. A long and unwavering line of cases, extending from those early years of the law to the present, sustain this doctrine. *Eastman* v. *State*, 109 Ind. 278, and cases cited; *Orr* v. *Meek*, 111 Ind. 40; *State, ex rel.*, v. *Green*, 112 Ind. 462.

This firmly settled doctrine is thus well stated in a late work: "Where the successful prosecution of a calling requires a certain amount of technical knowledge and professional skill, and the lack of them in the practitioner will result in material damage to one who employs him, it is a legitimate exercise of police power to prohibit any one from engaging in the calling who has not previously been examined by the lawfully constituted authority and received a certificate in testimony of his qualification to practice the profession. The right of the State to exercise this control over the skilled trades and the learned professions, with a single exception in respect to teachers and expounders of religion, has never been seriously questioned." Tiedeman Limitations of Police Power, section 87, p. 200.

In even stronger language, Judge Cooley affirms this general principle. Cooley Torts, 289.

This principle extends to many trades and professions, as pilots, engineers and the like. Tiedeman Limitations of Police Power, p. 624; Cooley Const. Lim. 743.

The legislative judgment that the welfare of the public requires that those practicing the dental profession shall possess the necessary skill and learning and shall obtain a certificate, is probably conclusive. But, if it were not, the courts must take judicial knowledge that it is a profession requiring skill. The fact that the dentist employs his professional skill upon an important part of the human body is, of course, known to every one, and can not be unknown to the courts. As this is known, it must follow that it may also be judicially known that one unskilled in the profession may injure the person who employs him. As this is so, then, as we have seen, the Legislature may prescribe the qualifications of those permitted to practice the profession.

The board of examiners established under the law is the lawfully constituted authority, and from it the certificate required by law must be obtained. The Legislature, as the law-making power, has authority to prescribe the method of procedure. Its authority does not end with declaring what qualifications he who enters upon the practice of that profession shall possess. As it has plenary power over the whole subject, it alone must be the judge of what is wise and expedient, both as to the qualifications required and as to the method of ascertaining those qualifications. The courts can not exercise any supervisory power over the Legislature as long as it keeps within the limits of the Constitution. Fry v. State, 63 Ind. 552; Eastman v. State, supra; Cooley Const. Lim. 202, 206.

It is established law that an act of the Legislature can not be annulled by the judiciary in any respect unless it clearly contravenes some provision of the Constitution. Doubt must be resolved in favor of the validity of the statute. Since

this doctrine was announced by Chief Justice MARSHALL, early in the history of our country, it has been inflexibly adhered to by all the courts. Cooley Const. Lim. (5th ed.) 218 ; *Beauchamp* v. *State*, 6 Blackf. 299 ; *Pittsburgh, etc., R. W. Co.* v. *Brown*, 67 Ind. 45 (33 Am. R. 73) ; *Hedderich* v. *State*, 101 Ind. 564 (51 Am. R. 768) ; *Robinson* v. *Schenck,* 102 Ind. 307 (319).

As the Legislature has exclusive power over the entire subject, it is our duty to uphold the statute as it comes to us from the Legislature with the executive sanction. We can not annul any part of the statute unless it clearly violates some provision of the Constitution. We have given full consideration to the appellant's argument, but we are unable to perceive that it even proves that it is probable that some provision of the Constitution has been violated; much less does it prove that it has been violated beyond doubt.

It is contended that the act is unconstitutional because it authorizes the Indiana Dental Association to appoint three members of the board of examiners. The argument is, that the dental association is a corporation, and that the act, in authorizing it to appoint, enlarges its corporate powers, and, therefore, violates the Constitution by enlarging the powers of a corporation by a special act. In more particulars than one this argument is unsound. It rests on an undue assumption. Authorizing a corporation to select persons to perform a duty in which the public are interested is, in no just sense, the enlargement of corporate powers. The designation of the corporation as the selecting body is not the grant of corporate power. This is very clear to our minds. Clearly, the Legislature might repeal the act at pleasure, and this, of itself, proves that no corporate right is granted, for if there were such a grant, there could be no valid repeal. It is quite as clear, that a statute which directs a person, artificial or natural, to perform a particular act, is not for that reason transformed from a general into a special statute. But granting (and the concession can only be made for the argument's

sake) that the authority to appoint members of the board of examiners is a corporate act, still the concession would by no means lead to the conclusion that the statute infringes upon the Constitution.

The provision which it is asserted the act violates is this: "Corporations, other than banking, shall not be created by special act, but may be formed under general laws." It can not, with the faintest tinge of justice, be affirmed that the simple delegation of authority to appoint three men to perform duties affecting the public is the creation of a new corporation. Changes of infinitely more importance have been held not to create a new corporation. *Wallace* v. *Loomis*, 97 U. S. 146; *Attorney General* v. *North American L. Ins. Co.*, 82 N. Y. 172; *Southern Pacific R. R. Co.* v. *Orton*, 6 Sawyer, 157.

The general rule is thus stated by a late writer: "A special act of the Legislature regulating an existing corporation, or granting to it new privileges, without altering its character or affecting the charter contract, would not be in violation of the letter nor of the spirit of a constitutional prohibition of this description." Morawetz Corp., section 12.

The case of *Wiley* v. *Corporation of Bluffton*, 111 Ind. 152, declares a similar doctrine. But it is really not necessary to inquire how far a corporate grant may extend without violating the Constitution, for we are well satisfied that the delegation of the naked power to name three members of the board is not a grant of corporate power.

The objection that the act invests the board of examiners with judicial functions is fully answered by the cases of *Elmore* v. *Overton*, 104 Ind. 548 (54 Am. R. 343); *Eastman* v. *State*, *supra*, and the cases there cited.

If the appellant were correct in his assumption, then every school examiner who examines an applicant for license, every clerk who accepts and acts upon an affidavit, every auditor who accepts an abstract of title when he loans school funds, and every officer who approves a report, would exercise judicial

functions.   That they do in some degree act judicially is true, and so does every officer, from the Governor to constable, who is invested with discretionary powers; for the Governor, when he issues a requisition for a fugitive from justice, decides many things; and the constable, when he executes a writ or a warrant, exercises a discretion; but no one of these officers exercises judicial judgment in the sense that a court or judge does.   These officers, one and all, are ministerial officers, and not judges or courts, and the judicial functions meant by the Constitution are such only as courts or judges exercise.   A judicial duty, within the meaning of the Constitution, is such a duty as legitimately pertains to an officer in the department designated by the Constitution as the judicial. By this designation is meant the judiciary in the true sense of the term.

This case falls within the class of cases represented by *Maynes* v. *Moore*, 16 Ind. 116, *Flournoy* v. *City of Jefferson-ville*, 17 Ind. 169 (79 Am. Dec. 468), *Pennington* v. *Streight*, 54 Ind. 376, *State, ex rel.*, v. *Johnson*, 105 Ind. 463 (467), *Weaver* v. *Templin, ante*, p. 298, *Betts* v. *Dimon*, 3 Conn. 107, and *Crane* v. *Camp*, 12 Conn. 463.

In *Flournoy* v. *City of Jeffersonville, supra*, the court said : "An act is none the less ministerial, because the person performing it may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act."

It is a mistake, therefore, to assume that the statute must conform to all the requirements as to notice and like incidents that would be necessary if the act were judicial.   We can not, therefore, hold the act unconstitutional because it does not make such provisions as would be necessary if the examiners constituted a judicial tribunal.   We suppose a successful defence might be made by a person who had in good faith sought an opportunity to obtain a license, and failed through the fault of the examiners to meet at the time appointed; but one who has had notice, and failed to avail

himself of the opportunity, as was the case here, can not successfully defend. The time and place of meeting of the board are to be fixed by the persons whom the law has vested with authority, and one who desires a license must, at least, make reasonable inquiry, for a public law gives him notice. Nor is an applicant delayed until the meeting of the board of examiners, for section 7 of the act expressly provides that "Any member of the board may grant a permit to any person who shall file with the member his application therefor." There is, therefore, no denial of an opportunity to acquire a permit, nor any delay required, for a permit may be had at any time upon application. The way, therefore, is always open, and no one need be in doubt what course to pursue. One who has a way always open to him by which he can attain what is required to protect him, has himself to censure if he does not use diligence to avail himself of the opportunity afforded him. If the permit is obtained under section 7, then notice is necessarily imparted; but, where the party must himself take the initiatory step, he can not insist that notice shall be given him before prosecution.

If it were conceded that counsel are right in asserting that section 11, which provides the method in which compensation of members of the board of examiners shall be fixed, is unconstitutional, it would not avail the appellant, for if all that part of the statute were annulled, there would still be a complete law, fully prescribing rules and adequately defining the offence charged. It is perfectly well settled, that a part of a statute may be declared invalid, and, if enough remains to constitute a complete statute, that which remains may be enforced. If, therefore, all that part of the statue which relates to the compensation of members of the board of examiners should be rejected, the appellant would derive no benefit, for the valid part of the statute fully prescribes the duties of those who assume to practice dentistry, and fully defines and creates the offence described in the indictment.

Arguments that might, perhaps, not be without weight if

addressed to the Legislature are adduced by counsel ; but, as these arguments all bear upon questions of pure legislative policy, they can have no weight with the courts. All that the courts can do, even though they may be impressed with the need of amendments, is to test the statute by the Constitution, and if it sustains that test, they must uphold it as it is written.

It is urged that the State did not prove that the Indiana Dental Association was duly incorporated, and that for this reason there should have been an acquittal. This position is untenable. It is so because it is immaterial whether the association was incorporated or was not, for the Legislature might have authorized an unincorporated association, as well as an incorporated one, to select three members of the board of examiners. It is so, because, granting that only a corporation could be authorized to appoint, the corporate existence can not be questioned in a collateral proceeding. It is so, because the Legislature has recognized the existence of the association, and this creates the presumption, if, indeed, it does not do much more, that it had a legal existence.

Finding no error in the record, we affirm the judgment.

