MARY J. TOWNSHEND v. GEORGE H. GRAY, G. C.
WASHBURN AND C. F. HARWOOD.

*Degrees; when institutions may confer. Medical censors. R. L.
s. 3664.*

1. A medical college, organized under R. L. s. 3664, cannot confer the degree
   of M. D. No such authority is expressly given by the statute, nor is it
   fairly inferable therefrom.
2. The censors of a medical society in this State need not license an appli-
   cant to practice medicine upon the strength of a diploma from such an
   institution, as, in this case, the Vermont Medical College.
3. *Quere,* how far such censors may determine whether the diploma pre-
   sented to them furnishes satisfactory evidence of the applicant's quali-
   fications to practice.

Petition for mandamus returnable to and heard at the Wind-
sor County Court, February Term, 1890. The case appears in
the opinion.

*J. C. Baker,* for the complainant.

When the applicant presents a regular diploma from a medi-
cal college the censors must issue a license. They have no dis-
cretion. R. L. s. 3911.

The Vermont Medical College is a legal corporation duly
organized under chap. 169, R. L. The authority to organize it
is found in R. L. s. 3664, sub-div. 10. It has all the powers of
a corporation specifically chartered. *United States Trust Co.*
v. *Brady,* 20 Barb. 119; *Railroad Co.* v. *Canal Com.,* 21
Penn. St. 9; *Stow* v. *Flagg,* 72 Ill. 397; Field Corp. s. 15;
Morawetz Pr. Corp. s. 17; *Rogers* v. *Danby Universalist Soc.,*
19 Vt. 187; *Plank Road Co.* v. *Vaughan,* 14 N. Y. 546;
Field Corp. s. 18.

*H. A. Huse,* for the defendants.

A medical college incorporated under the general law has no
power to grant diplomas. *The Medical College of Phila-
delphia,* 3 Wharton, 445.

The action of the Censors was judicial and cannot be revised.

,The opinion of the court was delivered by

POWERS, J.   This is a petition by the complainant, claiming to be a graduate of the Vermont Medical College and holding a diploma of that college conferring upon her the degree of M. D., against the defendants, who are the censors of the Vermont State Eclectic Medical Society, praying that a writ of mandamus be issued commanding the defendants as such censors to issue to the complainant a certificate authorizing her to practice medicine in this State.

Our statute provides that every medical society chartered by the Legislature "shall issue certificates to physicians and surgeons who furnish evidence, by diploma from a medical college or university, or by certificate of examination by an authorized board, which satisfies said censors that the person presenting such credentials has been, after due examination, deemed qualified to practice the branches mentioned in such diploma or certificate."

The case shows that the complainant presented to the defendants as such censors her diploma aforesaid and the defendants refused to issue the certificate above referred to on the ground that the Vermont Medical College had no legal power to issue a diploma conferring the degree of M. D., and so the complainant had not shown credentials entitling her to a license to practice medicine.

The main question in issue is whether said medical college has the power to issue diplomas which entitle the holder to the license provided for in the statute.

Without going into the question at length touching the power conferred by the statute upon the censors, which has been discussed in argument, it is plain that this board has the power to decide in the first instance whether a diploma presented to it as evidence of the holder's right to a license is a genuine or spurious document.   So far at least the board may sit in judgment upon a diploma, and in this case the board adjudged that this

diploma did not have such legal efficacy as evidence as would warrant the issue of a license.

The Vermont Medical College was organized under the provisions of the 10th sub-division of section 3664, R. L. That section provides that " persons may associate together and have the powers of a corporation for either of the following purposes: * * * 10th. To establish and maintain literary and scientific institutions." Later sections in the same chapter enumerate the powers which such associations may have, namely : May have a corporate name ; a corporate seal ; may adopt by-laws ; may sue and be sued ; purchase and hold real estate ; may raise money and divide their capital stock into shares. Under this sub-division it is argued that a medical college may be organized with the power to confer the degree of M. D.

It is fundamental that a corporation has such power only as is conferred by its charter with such incidental powers as are necessary to enable it to exercise its chartered power. No. express power to confer degrees can be found in the statute under which this medical college was organized, and hence the power to confer degrees must be classed as incidental to the general powers of a corporation formed for the purpose of maintaining a literary or scientific institution, if it exists at all.

It would hardly do to say that literary or scientific institutions have such power upon any theory that without it they cannot answer the ends of their creation. The degree of M. D. is something more than a mere honorary title. It is a certificate attesting the fact that the person upon whom it has been conferred has successfully mastered the curriculum of study prescribed by the authorities of an institution created by law and by law authorized to issue such certificate. It thus has a legal sanction and authority. But it has more. In practical affairs it introduces its possessor to the confidence and patronage of the general public. Its legal character gives it a moral and material credit in the estimation of the world and makes it thereby a valuable property right of great pecuniary value.

Townshend *v.* Gray et al.

The scope of sub-div. 10 of the statute in question may be discovered by looking at the other sub-divisions of the same section. These provide for the organization of library associations, bands of music, associations for breeding fish, for bringing to justice thieves and burglars, building meeting houses, securing burial grounds, etc. The articles of association are to be filed in the town clerk's office in the town where the association is organized. All this points to associations of limited and local scope.

The filing of the articles of association, which constitute the charter under which the association proceeds with its work, in the town clerk's office, indicates that the Legislature did not regard such associations as having powers, the exercise of which concerned the general public.

The power to confer degrees not being conferred explicitly by the statute and not being necessary to enable a literary or scientific institution to carry forward studies of a literary or scientific character, clearly does not exist at all. Medical College Case, 3 Wharton, 445.

It is no more appropriate to say that a literary or scientific institution without special statutory power can confer the degree of M. D. than to say that it may confer the degree of LL. D. or D. D. or A. B., for it is plain that law schools, theological schools, universities and colleges can be organized under this sub-division equally well with medical schools.

Every State in the Union has chartered these institutions and it is believed that none of them has ever supposed that with all the widely enumerated powers delegated to them, it had the power to confer degrees of any kind unless such power was expressly conferred in its charter. In the case of the Castleton Medical School, chartered many years ago, the charter as first granted contained no delegation of power to confer degrees, but at the next session of the Legislature it was amended by an act giving such power.

Such has manifestly been the legislative idea respecting the necessity of special authority from the law-making power of the

government touching the right to confer degrees, and construing this general statute, providing for the organization, by voluntary association of persons for local and comparatively unimportant purposes, in the light of the common usages and common understanding of people respecting the rights, privileges and emoluments universally accorded to persons upon whom degrees have been conferred, we are clearly of the opinion that the Vermont Medical College has no power under its articles of association to confer degrees of any kind.

To hold that the Legislature by the general law intended that any three men in any town in the State, however illiterate or irresponsible, might organize and flood the State with doctors of medicine, doctors of law, doctors of divinity, masters of arts, civil engineers and all the other various titles that everywhere in the civilized world have signified high attainments and special equipment for professional work, is to liken it to the witty French minister who threatened to create so many dukes that it would be no honor to *be* one, and a burning disgrace *not* to be one.

The complainant therefore in submitting her diploma to the board of censors did not furnish that board any sufficient evidence of qualification that entitled her to the license asked for.

*The petition is dismissed with costs.*