229 Ind. 633 (1951)
99 N.E.2d 419
LUCAS
v.
STATE EX REL. BOARD OF MEDICAL REGISTRATION AND EXAMINATION OF INDIANA.
No. 28,686.
Supreme Court of Indiana.
Filed June 21, 1951.
Rehearing denied October 2, 1951.
*635 Flanagan & Miller, of Fort Wayne, for appellant.
J. Emmett McManamon, Attorney General; Thomas L. Webber and George W. Hand, Deputy Attorneys General; and Alton L. Bloom, Prosecuting Attorney, 38th Judicial Circuit, for appellee.
JASPER, J.
This is an action to permanently enjoin appellant from practicing medicine in the State of Indiana without a license, under § 63-1311, Burns' 1943 Replacement. Appellant filed an amended plea in abatement in two paragraphs, to which appellee filed a demurrer for failure to state facts sufficient *636 to abate the action. The demurrer was sustained. After notice and hearing, a temporary injunction was issued. Appellant then filed an answer in three paragraphs, the first paragraph an answer in denial under our Rule 1-3, and the second and third paragraphs as affirmative answers in bar, raising the question of the constitutionality of the Board of Medical Registration and Examination. A demurrer was filed to the second and third paragraphs of answer, which demurrer was sustained by the trial court. By stipulation, the same evidence was submitted to the court as at the hearing on the temporary injunction, and a permanent injunction issued.
Appellant assigns as error the sustaining of appellee's demurrer to appellant's amended plea in abatement, and the sustaining of appellee's demurrer to appellant's second and third paragraphs of answer.
Each assignment raises the same question, namely the constitutionality of the act of 1945 (Acts 1945, chapter 80, § 2, page 173; § 63-1305, Burns' 1943 Replacement [1949 Supp.]).
Appellee contends that the demurrer to the plea in abatement was properly sustained for the reason that such plea was a defense, and therefore could be raised only by a plea in bar. With this contention we agree. A plea in abatement must show a reason for abating the present action, but not one stating a defense to the cause of action. State ex rel. v. Board of Comrs. of Adams County (1944), 222 Ind. 284, 287, 53 N.E.2d 347, 348. In the last-cited case, this court said:
"A plea in abatement is one which shows some reason for abating or defeating the pending action, but does not undertake to state a defense thereto. Such a plea is in the nature of an admission that the plaintiff may have a cause of action but asserts *637 that he cannot maintain it at the present time, in the present form, or in the court in which it has been brought. It will not, if sustained, prevent the plaintiff from recommencing his action at the proper time or in the proper way or court.... Of necessity, then, matters in bar of the plaintiff's right of action are not properly assignable by way of a plea in abatement."
In the case now before us, the plea in abatement raises solely a constitutional question, which, if sustained, would be a complete defense to the action, and there would be no proper time, way, or court in which appellee could maintain its action. A plea in abatement must be certain in every particular, and not only point out the plaintiff's error, but also show him how to avoid the error in the amendment of his pleading or in another suit. Needham et al. v. Wright et al. (1895), 140 Ind. 190, 39 N.E. 510. Appellant, by his plea in abatement, denies the existence of a cause of action. This court said, in the case of Swing v. Toner (1912), 178 Ind. 102, 105, 96 N.E. 946, 947:
"`Whenever the subject-matter of the plea or defence is that the plaintiff cannot maintain any action at any time whether present or future in respect of the supposed cause of action, it may, and usually must be pleaded in bar; but matter which merely defeats the present proceeding, and does not show that the plaintiff is forever concluded, should in general be pleaded in abatement.'" ...
The demurrer to the plea in abatement was properly sustained.
Appellant contends that the Medical Practice Act, § 63-1305, Burns' 1943 Replacement (1949 Supplement), is unconstitutional in so far as it attempts to create a medical board to license chiropractors, (1) because the composition of the board is inherently *638 discriminatory and prejudiced against chiropractors, (2) because each of the members of the medical profession has a pecuniary interest in the elimination of chiropractors, and (3) because an applicant for a chiropractic license could not receive a fair and impartial hearing before the medical board as constituted, all in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and of Article 1, Section 23, of the Constitution of Indiana.
Appellant further contends that because of the last-cited act being unconstitutional the board is nonexistent, and appellant therefore is not required to have a license to practice chiropractics. This court has held that the practice of chiropractics is the practice of medicine. State ex rel. Board, etc. v. Hayes (1950), 228 Ind. 286, 91 N.E.2d 913. Under § 63-1301, Burns' 1943 Replacement, the Legislature made it unlawful to practice medicine without a license. Therefore, until appellant obtains a license, he cannot practice chiropractics. State ex rel. Board, etc. v. Frasure (1951), 229 Ind. 315, 98 N.E.2d 365. The Board of Medical Registration and Examination of Indiana was granted the authority to make rules and regulations and to set standards for medical schools, which includes chiropractic schools, and also to set the requirements which must be met by applicants for examination to practice chiropractics under a medical license. Section 63-1306, Burns' 1943 Replacement (1949 Supp.). An applicant for a license to practice chiropractics is exempted by statute from taking an examination in materia medica, surgery, and obstetrics. Section 63-1312, Burns' 1943 Replacement. In conformity with the statutes, the Board of Medical Registration and Examination adopted Rule No. 39, as amended by Rule No. 50, which rule prescribes the *639 requirements for medical schools and the teaching of chiropractics. The rules, both as to schools of chiropractic and applicants for examination, specifically exempt the study of and examination in materia medica, surgery, and obstetrics, and thus meet the standards set by the Legislature. Blue v. Beach (1900), 155 Ind. 121, 56 N.E. 89.
Appellant does not assert that the rules as adopted are unreasonable, or in excess of legislative authority, or a delegation of legislative authority, in violation of Article 4, Section 1, of the Constitution of Indiana.
In the case of Pitzer v. Ind. State Board (1932), 94 Ind. App. 631, 638, 639, 177 N.E. 876, 878, the court said:
"It therefore follows that appellant is not entitled to an examination, or a certificate, and license to practice chiropractic until he has satisfied the Indiana State Board of Medical Registration, by presenting evidence that he is a graduate of a college maintaining a standard of medical education meeting the minimum requirements as fixed by said board."
Appellant has made no effort to comply with these rules and with the statutes.
Appellant attempts to set his own standards of qualifications for a license, and disregards the standards as set by the Legislature for education and examination. As has often been said by this court, the practice of medicine requires the highest standards of education. In State, ex rel. Burroughs v. Webster et al. (1898), 150 Ind. 607, 616, 617, 618, 619, 620, 621, 50 N.E. 750, 753, 754, 755, the court said:
"`Statutes similar to the one under consideration, denying to all physicians in the state, lawfully engaged in practice, the right to continue such practice, until they conform to the requirements of the statute, and restricting the practice of medicine *640 to persons who are able to demonstrate their qualifications have been held constitutional as a proper exercise of the police power of the state in nearly every state of the union and in the Supreme Court of the United States. (Cases cited.)
"`Similar statutes have been construed and recognized as the law in cases where their constitutionality was not questioned, as follows: (Cases cited.)
"`Similar statutes have been sustained for the regulation of the practice of dentistry. (Cases cited.)
"`It has been held that the practice of pharmacy may be similarly regulated. (Cases cited.) It has been held that the state may regulate the trade of plumbing and limit the privilege of examinations. (Cases cited.) And also engineers. (Cases cited.) And even lawyers. (Cases cited.)
"`In every one of these cases it has been held that it is within the power of the General Assembly to prescribe qualifications for the practice of the professions or trades named, and to regulate and control these professions, even to the point of taking away the right to practice from persons lawfully engaged in the practice who may be deemed insufficiently qualified in the judgment of the board or official to whom the examination of the applicant has been entrusted.'
"In Eastman v. State, supra, this court said: `The practice of medicine and surgery is a vocation that very nearly concerns the comfort, health and life of every person in the land. Physicians and surgeons have committed to their care the most important interests, and it is an almost imperious necessity that only persons possessing skill and knowledge should be permitted to practice medicine and surgery. For centuries the law has required physicians to possess and exercise skill and learning, for it has mulcted in damages those who pretend to be physicians and surgeons, but have neither learning nor skill. It is therefore, no new principle of law that is asserted by our statutes, but, if it were, it would not condemn the statute, for the statute is an exercise of the police power inherent in the state. It is, no one can doubt, *641 of high importance to the community that health, limb, and life should not be left to the treatment of ignorant pretenders and charlatans. It is within the power of the legislature to enact such laws as will protect the people from ignorant pretenders, and secure them the services of reputable, skilled, and learned men.'
"And, in Dent v. West Virginia, supra, it was said by the Supreme Court of the United States: `It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition. This right may, in many respects be considered a distinguishing feature of our republican institutions. Here all vocations are open to every one on like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the estate acquired in them, that is, the right to continue their prosecution, is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can be thus taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society. The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud. As one means to this end it has been the practice of different states from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely, their possession being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. The nature and extent of the qualifications *642 required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation.
"`Few professions require more careful preparation by one who seeks to enter it than that of medicine. It has to deal with all those subtle and mysterious influences upon which health and life depend, and requires not only a knowledge of the properties of vegetable and mineral substances, but of the human body in all its complicated parts, and their relation to each other, as well as their influence upon the mind. The physician must be able to detect readily the presence of disease, and prescribe appropriate remedies for its removal. Every one may have occasion to consult him, but comparatively few can judge of the qualifications of learning the skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications. Due consideration, therefore, for the protection of society may well induce the state to exclude from practice those who have not such a license, or who are found upon examination not to be fully qualified. The same reasons which control in imposing conditions, upon compliance with which the physician is allowed to practice in the first instance, may call for further conditions as new modes of treating disease are discovered, or a more thorough acquaintance is obtained of the remedial properties of vegetable and mineral substances, or a more accurate knowledge is acquired of the human system and of the agencies by which it is affected. It would not be deemed a matter for serious discussion that a knowledge of the new acquisitions of the profession, as it from time to time advances in its attainments for the relief of the sick and suffering, should be required *643 for continuance in its practice, but for the earnestness with which the plaintiff in error insists that, by being compelled to obtain the certificate required, and prevented from continuing in his practice without it, he is deprived of his right and estate in his profession without due process of law. We perceive nothing in the statute which indicates an intention of the legislature to deprive one of any of his rights. No one has a right to practice medicine without having the necessary qualifications of learning and skill; and the statute only requires that whoever assumes, by offering to the community his services as a physician, that he possess such learning and skill, shall present evidence of it by a certificate or license from a body designated by the state as competent to judge of his qualifications.' See, also, the very recent case of Hawker v. People (U.S.), 18 Sup. Ct. Rep. 573."
The reasoning in the last-cited case applies equally to the practice of chiropractics, since both medical doctors and chiropractors minister to the ills of the human body. The Board of Medical Registration and Examination has through its adopted rules set requirements in compliance with the legislative enactment as to educational requirements as well as requirements for examination. Therefore, if a chiropractor desires to be licensed in this state, he must meet the requirements as set by the Board of Medical Registration and Examination.
Appellant further contends that the composition of the Board of Medical Registration and Examination is unconstitutional because the members of the medical profession have a direct, pecuniary interest in the elimination of chiropractics. Appellant relies principally upon the case of Milk Marketing Board v. Johnson (1940), 295 Mich. 644, 295 N.W. 346, in which case the act creating the Milk Marketing Board provides that the board shall consist of five members, one *644 member to be the commissioner of agriculture, and the four other members to be appointed, two of whom were to be milk producers not connected with the distribution of milk, one a distributor of milk, and one a consumer of milk. The distributor appointed was a member of the firm which was the third largest distributor in the Detroit area, one member was the President of the Michigan Milk Producers Association, and another was a member of the Kalamazoo Milk Producers Association. The Commissioner of Agriculture was also a producer of milk. The Michigan Milk Producers Association provided 80 per cent. of the milk sold in the Detroit marketing area. Johnson was the fourth largest milk distributor in the Detroit area.
The Milk Marketing Board, after hearing, issued Order No. 2, as amended, relative to the minimum prices to be paid producers of milk by distributors in the Detroit area, and Orders Nos. 3 and 4 relative to minimum prices at which milk could be sold to the consumer. Orders Nos. 3 and 4 were appealed by certiorari, as the act provided, and the board filed suit against Johnson to enforce Order No. 2. The Michigan Supreme Court reversed the Circuit Court, and vacated all orders of the board, stating, among other things, that the act required the appointment of a board, the majority of whose members have a direct, pecuniary interest in the matters submitted to them; and in order that the administration of the milk industry be conducted in a fair and impartial manner it was essential that the board be impartial in its composition, and therefore the act is fatally defective in its provisions for the appointment of the personnel of the board. The court further said that Johnson was entitled to a fair and impartial hearing before the fixing of prices and regulation of his business; *645 that while the prices fixed by the board applied to all producers and distributors, the effect of the price scale was not the same upon all; that no one should act as a judge in his own cause; and that the board, as constituted under the statute, was of such a nature that Johnson was not, and could not have been, accorded a hearing which satisfies the requirements of due process.
In the case now before us it appears that a majority of the Board of Medical Registration and Examination are members of the medical profession, holding a license to practice medicine, obstetrics, and surgery. There is no contention that these members are directly pecuniarily interested except by reason of that fact. None of the members are shown to be from the community in which appellant lives, and none of the members are shown to be financially interested in any way in appellant's community or in his practice. In the Milk Marketing Case, supra, the members of the Milk Board were shown to be directly affected by the minimum prices to be charged. In the action now before us, the members of the Medical Board, even though they were from the same community as appellant, would appear to have only an indirect, pecuniary interest. In the case of Metsker v. Whitsell (1914), 181 Ind. 126, 137, 103 N.E. 1078, 1082, this court said:
"A judge's direct, pecuniary interest in the result of the litigation furnishes sufficient ground for his recusation, regardless of whether such interest is great or small. (Cases cited.) However, where the interest is indirect, such as that of a general taxpayer, it does not ordinarily disqualify."
See, also, Decatur Twp. v. Board of Comrs. of Marion Co. (1942), 111 Ind. App. 198, 39 N.E.2d 479. The *646 rule in the last-cited case applies to judicial and quasi judicial officers. Under this rule, the members of the Board of Medical Registration and Examination would not be disqualified to perform the duties imposed upon them. Eastman v. State (1887), 109 Ind. 278, 10 N.E. 97; State ex rel. Burroughs v. Webster et al. (1898), 150 Ind. 607, 50 N.E. 750, supra.
The composition of the Board of Medical Registration and Examination, and the manner in which it may function, is a legislative question, and not judicial, Wilkins v. State (1888), 113 Ind. 514, 16 N.E. 192, the wisdom of which is a matter to be determined by the Legislature. State ex rel. Burroughs v. Webster et al., supra; State ex rel. Board, etc. v. Cole (1939), 215 Ind. 562, 20 N.E.2d 972; Wilkins v. State, supra. So long as the Constitution is not offended, we may not interfere with its enactments.
Appellant further contends that he cannot have a fair and impartial hearing before the Medical Board as now constituted. Appellant's answer fails to allege that he has met the qualifications and that he has applied for a license. He contends that because five members of the board are medical doctors, holding unlimited licenses to practice medicine, they desire to eliminate all chiropractors and monopolize the profession. Merely because a person holds a license in a certain professional field, and is appointed to a board to pass upon the qualifications of those requesting a license to operate in that field, it cannot be said to justify the assertion that he is so unfair and partial that he cannot fairly and impartially pass upon the requirements and fix the standards as set by the Legislature. If this were true, the composition of every professional board in the State of *647 Indiana, including the Board of Law Examiners, would offend the Constitution. Whether or not the Medical Board is unfair and partial cannot be determined until appellant meets the requirements as set by the board (concerning which requirements appellant does not complain) and applies for a license. State ex rel. Board, etc. v. Cole (1939), 215 Ind. 562, 20 N.E.2d 972, supra; State ex rel. Board, etc. v. Henry (1951), 229 Ind. 219, 97 N.E.2d 487; State ex rel. Board, etc. v. Frasure (1951), 229 Ind. 315, 98 N.E.2d 365, supra.
Appellant, by his answer, is attempting to make a collateral attack upon the conduct of the Medical Board. This appellant cannot do. State ex rel. Board, etc. v. Frasure, supra; State ex rel. Board, etc. v. Cole, supra.
The Legislature in its enactment of § 63-1305, Burns' 1943 Replacement (1949 Supp.), did not violate the Due Process Clause of either the Federal Constitution or the Constitution of Indiana.
After examining all of the contentions of appellant, we find that the demurrer to the second and third paragraphs of answer was properly sustained.
There being no reversible error, the judgment is affirmed.
NOTE.  Reported in 99 N.E.2d 419.