DECATUR TOWNSHIP ET AL. *v.* BOARD OF COMMISSIONERS OF MARION COUNTY ET AL.

[No. 16,555. Filed February 13, 1942. Rehearing denied March 24, 1942. Transfer denied May 1, 1942.]

200

*Johnson, Zeichel & Johnson,* and *Frances E. Thomason,* all of Indianapolis, and *Herbert Jones,* of Shelbyville, for appellants.

*George Burkhart* and *Kriner & Harman,* all of Indianapolis, and *Kivett & Kivett,* of Martinsville, for appellees.

BEDWELL, P. J.—By this action the appellants sought to have declared void an order of the board of commissioners of Marion County, Indiana, entered on November 3, 1933, fixing the boundary line between Perry and Decatur Townships of Marion County, Indiana, and to restrain the appellees from recognizing the boundary fixed by such order and from taking any steps to assess or collect taxes on property transferred to Perry Township by such order.

The appellees filed an answer in two paragraphs, paragraph one of which was in general denial and paragraph two of which was an answer of former adjudication. Part of the appellees filed a cross-complaint to compel the auditor of Marion County to place the property changed from Decatur Township to Perry Township, by such order of the board of commissioners, on the tax duplicates as property of Perry Township. A similar action was filed by George Burkhart in which he sought to mandate the auditor and treasurer of Marion County to transfer the same property from Decatur Township to Perry Township. This action was consolidated with the other action and issues were closed by answers or replies of denial to aforesaid pleadings.

The matter was submitted to the trial court for determination and it made a general finding in favor of the

appellees and rendered judgment thereon. The appellants filed timely motion for a new trial and on appeal they are relying on the grounds thereof specifying that: (a) The decision of the court is not sustained by sufficient evidence; and, (b) the decision of the court is contrary to law.

Appellants admit that there is but one fundamental question involved in the appeal, and that is the legal right of the board of commissioners of Marion County to change the boundary line between Perry and Decatur Townships, as such boundary line was changed by the order of such board on the 3rd day of November, 1933.

It appears from stipulated facts that such change in boundary line would result in transferring from Decatur Township to Perry Township certain property of the Indianapolis Power & Light Company of the assessed valuation of $5,926,230. It further appears that the order making such change in boundary line was adopted by the votes of two members of the board of county commissioners of Marion County, and that one of such two members approving such order was a resident freeholder and a taxpayer of Perry Township.

Appellants first attack the validity of such order upon the ground that the member of the board of county commissioners who voted for such order, and who was a taxpayer and freeholder of Perry Township, was disqualified because of interest from acting thereon. It is not suggested or claimed that such member was interested or affected by the proposed change in boundary line, except, indirectly, as the rate of taxation upon his taxable property might be reduced because of an increase in the amount of the taxable property of Perry Township resulting from the addition thereto of the property of the Indianapolis Power & Light Company.

The rule requiring fairness, impartiality and disin-

teredness on the part of judges or of those officials who exercise judicial or *quasi* judicial functions, ■ is as old as the history of the courts. It is imposed in the constitution of some of the states. In the case of *Carr* v. *Duhme* (1906), 167 Ind. 76, 79, 78 N. E. 322, in discussing the subject of the disqualification of judges and judicial tribunals, the Supreme Court said:

"It is an ancient maxim of the law, that no man should be a judge in his own cause, and this principle still prevails wherever judicial tribunals are maintained. *Winters* v. *Coons* (1904), 162 Ind. 26. It is of such potent force that, under our constitutions and enlightened sense of justice, a legislative act which should undertake to make a man arbiter of his own case would be held void. Cooley, Const. Lim. (5th ed.), *407-*410.

"At common law the disqualification of a judge because of interest in the subject-matter brought before him did not affect his jurisdiction, and his acting in the cause was regarded as a mere irregularity or error, on account of which a timely recusation would afford ground for the reversal of his judgment upon appeal or writ of error."

Next in importance to the duty of rendering a righteous decision is that of doing it in such a manner as will beget no suspicion of the fairness and integrity ■ of the judge. *Crook, Judge, etc.* v. *Newborg & Son* (1900), 124 Ala. 479, 27 So. 432, 82 Am. St. Rep. 190.

Although there may be the legal right to act, it is the duty of all officials called upon to exercise judgment and discretion as between litigants to foster and build up confidence in the impartiality, integrity, and disinterestedness of the functioning of our democratic form of government. This cannot be done when the litigants feel that the official deciding is personally interested.

Despite those facts there are, and of necessity must be, certain legal limitations upon the disqualification because of interest of officers acting in a judicial or *quasi* judicial capacity.

A judge or an official exercising judicial functions may act in the proceeding where he is disqualified by interest, or for other reasons, if his jurisdiction is exclusive and there is no legal provision for supplying a substitute and his refusal or failure to act would prevent determination. *Galey* v. *Board, etc.* (1910), 174 Ind. 181, 91 N. E. 593; *Metsker* v. *Whitsell* (1914), 181 Ind. 126, 127, 103 N. E. 1078; *Evans* v. *Gore* (1920), 253 U. S. 245, 64 L. Ed. 887, 40 S. Ct. 550, 11 A. L. R. 519; Anno: 39 A. L. R. 1476; 42 L. R. A. (NS) 778; L. R. A. 1915E 858; Ann. Cas. 1917A 1061.

Where the judicial officer is a citizen or taxpayer of a municipality and he is called upon to determine a controverted matter in which the municipality is a party, his disqualification is dependent largely upon the manner and extent to which his interest will be affected. In the case of *Foreman* v. *Town of Marianna* (1884), 43 Ark. 324, 329, the question presented was whether a judge was disqualified to act upon an application to annex territory to a municipal corporation of which the judge was a resident, when he had voted upon the question of annexation as a voter of the municipality. In the course of its opinion the court said:

> "This is not a suit of a personal nature, concerning property or rights of persons. A general interest in a public proceeding, which a Judge feels in common with a mass of citizens, does not disqualify. If it did, we might chance to have to go out of the State, at times, for a Judge. The 'interest' which disqualifies a Judge, under the Constitution, is not the kind of interest which one feels

in public proceedings, or public measures. It must be a pecuniary or property interest, or one affecting his individual rights; and the liability or pecuniary gain or relief to the Judge must occur upon the event of the suit, not result remotely, in the future, from the general operation of laws and government upon the *status* fixed by the decision."

See, also, *Sioux City* v. *Western Asphalt Paving Corp.*, 223 Iowa 279, 271 N. W. 624, 109 A. L. R. 608; *Metsker* v. *Whitsell* (1914), 181 Ind. 126, 103 N. E. 1078; Anno: 6 Ann. Cas. 408; 33 A. L. R. 1322.

In the case of *Metsker* v. *Whitsell, supra,* the Supreme Court said at p. 137:

"A judge's direct, pecuniary interest in the result of the litigation furnishes sufficient ground for his recusation, regardless of whether such interest is great or small. (Cases cited.) However, where the interest is indirect, such as that of a general taxpayer, it does not ordinarily disqualify. (Cases cited.)"

In the case of *Carr* v. *Duhme, supra,* the board of commissioners rendered a final judgment establishing a drain and ordering its construction. One of the commissioners, as a landowner, was assessed for the construction thereof and he had filed a remonstrance against the same. Upon appeal to the circuit court, it refused to assume jurisdiction of the matter and ordered it certified back to the board because of the participation of the interested commissioner. The Supreme Court, although admitting that the commissioner was disqualified to act in the particular matter, held that the circuit court erred in returning the cause to the board of commissioners. It held that the disqualification of the particular commissioner did not make the proceedings of the board void, but rendered them voidable only, and that the disqualification and consequent error might

be waived by failure to make seasonable objection to the same. The court in its opinion said at p. 82:

"It was appellees' duty, if they desired to object to his acting because of interest, to make such objection at the earliest opportunity, and thereby prevent the accumulation of needless costs and the attainment of a fruitless result. If a party, knowing of a valid objection to a proceeding, neglects to avail himself of it, and stands by or participates therein until a result is reached adverse to his interests, it is but justice that he should bear the consequences which his own folly has suffered to occur."

It does not appear that appellants, although they were advised of the contemplated action of the board of county commissioners of Marion County for many months prior to November 3, 1933, made any objection to the participation of the commissioner who was a taxpayer and freeholder of Perry Township.

It has been suggested by appellees that the rules applicable to the action of judges or officers exercising judicial functions have no application here for the reason that the board of commissioners in making a change in the boundary line between the two townships acted in a ministerial and not in a judicial capacity. They call attention to the recent case of *State ex rel. Sink* v. *Circuit Court of Cass County* (1938), 214 Ind. 323, 15 N. E. (2d) 624, in which the Supreme Court held that a county board of commissioners performed a ministerial or governmental function rather than a judicial one, in dividing a township and defining the boundaries of a new township. It is sometimes quite difficult to determine when the act performed by officials, who may exercise judicial functions, are ministerial or judicial acts. In *Galey* v. *Board, etc.* (1910), 174 Ind. 181, 183, 91 N. E. 593, a ministerial act is defined by the Supreme Court as follows:

" 'A ministerial act may, perhaps, be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done.' "

It is not necessary for us to determine whether, under the facts here presented, the board of county commissioners exercised ministerial or judicial functions in making the particular order changing the boundary line between the two townships. For the reasons heretofore set forth, we are of the opinion that such order was not void because one of the two commissioners that adopted the same was a citizen, freeholder and taxpayer of one of the affected townships.

Appellants next attack the legal right of the board of commissioners to make the particular change in the boundary line of the two townships under the provisions of ch. 79, p. 446, of the Acts of 1919, same being § 26-705, Burns' 1933, § 16059, Baldwin's 1934.

Decatur Township is located at the southwest corner of Marion County, and Perry Township adjoins it on the east. The boundary line between the two townships was first established by the board of commissioners of Marion County, Indiana, in 1822. This was then a straight line which began at the northwest corner of Section 27, Township 15 North, Range 3 East, and ran thence south a distance of about six miles to the south line of Marion County. White River, at such time, crossed such boundary line in two separate places, and in 1833 the board of commissioners made an order providing that all the part of Decatur Township lying on the east side of White River be attached to and thereafter form a part of Perry Township. About the year 1878 White River changed its course so that a portion

thereof that was the boundary line between the two townships was relocated, but no additional order was made by the board affecting the boundary line until the order of November 3, 1933. This particular order fixed the channel of White River, as located on the date of such order, as the dividing line between the two townships and had the effect of locating a large portion of the property of the Indianapolis Power & Light Company in Perry instead of Decatur Township. It is admitted by the parties that a portion of the corporate limits of the City of Indianapolis extends into Perry Township, but the change in boundary line between the two townships had no relationship to and is without the city corporate line. The parties are in dispute as to whether any portion of the City of Indianapolis extended into Decatur Township as its boundaries were defined prior to November 3, 1933. When the board of commissioners took its action on November 3, 1933, a petition had been filed with the board signed by certain freeholders of Perry Township, but it was not signed by a majority of the freeholders of such township, and it was not signed by any of the freeholders of Decatur Township.

Chapter 79 of the Acts of 1919, prior to its amendment in 1939 (ch. 49, p. 364, of Acts of 1939), was as follows:

"No township or townships in any county in this state shall be abolished or its present boundary lines in any way changed or altered unless a majority of the freeholders of the township or townships affected thereby shall sign a petition requesting the board of county commissioners to order such change or abolishment: *Provided, however*, That the board of county commissioners may in their discretion without such petition abolish any township or townships or make such alteration in the boundary lines of any township or townships in which is situated the whole or any part of a city

having a population of fifteen thousand (15,000) or more according to the last preceding United States census as such board of commissioners may deem proper."

It is the contention of the appellants that in those townships of the State that were occupied in whole or in part by a city with a population of 15,000 or more, that the board of county commissioners could change the boundary line of such township or townships without petition and at its discretion, but that such change in boundary line of the township or townships was limited to the portion thereof that was within the corporate limits of the city. Appellants contend that unless this construction is given to chapter 79 of the Acts of 1919, the act was in violation of Section 23 of Article 1 and Section 22 of Article 4 of the State Constitution.

It is not necessary for us to consider the constitutionality of the act. If the act was violative of constitutional provisions such fact could not aid appellants. The action of the board of county commissioners would then have been governed by the provisions of chapter 133 of the Acts of 1859 (§ 26-701 to § 26-703, Burns' 1933), prior to its amendment in 1939 and 1941 (ch. 150 of Acts of 1939, p. 708 and ch. 155 of Acts of 1941, p. 478), and under the provisions of such act the county commissioners could make a change in the boundary lines of any township without a petition.

Appellants further contend that chapter 79 of the Acts of 1919 must be construed as we have heretofore set forth to carry out legislative intention and prevent injustice.

It has often been stated by the courts, that in the construction of statutes the prime object is to ascertain

and carry out the purpose and intent of the Legislature; that to do this the words should first be considered in their literal and ordinary signification; that if, by giving them such a signification, the meaning of the whole instrument is rendered doubtful, or is made to lead to contradictions, or absurd results, the intent, as collected from the whole instrument, must prevail over the literal import of terms, and control the strict letter of the law. *City of Indianapolis* v. *Huegele* (1888), 115 Ind. 581, 587, 18 N. E. 172.

It is a fundamental rule of interpretation of statutes that courts, while taking words in their ordinary sense, will look to the whole act, to the several parts thereof, to the object sought to be accomplished, and to the legislative intent, as exemplified by the speeches and history of the law in its progress through the several respective branches of the General Assembly. *Truelove* v. *City of Washington* (1907), 169 Ind. 291, 293, 82 N. E. 530.

But when we consider all rules of statutory construction, what intent could the Legislature have had in passing this particular statute except to classify the townships of the State and to provide that the board of county commissioners could, without a petition, abolish or alter the boundary lines only where the township was occupied in whole or in part by a city having a population of 15,000 or more. When we consider the language used, this is the only reasonable construction. The Legislature gives the board of commissioners power and authority, in the particular case, to abolish any township or townships or make such alteration in the boundary lines of any township or townships, "as such board of commissioners *may deem proper*." (Our italics.) There is nothing

about this language that would justify the conclusion that the power of the commissioners was limited in the specified cases to boundary lines that were within the corporate lines of the intruding city. By this act the board was given power to abolish "townships" not "parts of townships" where a city of a specified size intrudes. Could any one reasonably say that under such language the board is limited in abolishing a township to the portion thereof that is within the corporate limits of the intruding city? The fact that it might be most difficult to obtain a majority petition where a large city covered a portion of a township would be a plausible reason for making the classification. The language herein used is so plain that to give it the construction for which the appellants contend would amount to judicial legislation.

While it is the duty of the courts to construe statutes to give effect to the intention of the Legislature, they cannot read into the statute something that is not within the manifest intention of the Legislature as gathered from the act itself. *Travis, Rec.* v. *Porter* (1927), 86 Ind. App. 369, 372, 158 N. E. 234.

Appellants also contend that this statute should be interpreted so that the boundary between two townships could not be changed without petition, unless the city extended within both of such townships. The language of the act does not justify this construction. The act provided that the commissioners could abolish any "township or townships" or could make alterations in the boundary lines of any "township or townships" in which was situated the whole or any part of the particular city. If it had been the intention of the Legislature to require the city to intrude into both townships before a change in the boundary line

of either could be made, the intention would have been expressed with different language.

The appellees contend that the cause should be affirmed because there was pleading and proof of former adjudication of the questions presented by appellants' action, but in view of the conclusion we have reached concerning the construction of the involved statute, it is not necessary to consider the question of former adjudication.

The judgment is affirmed.

NOTE.—Reported in 39 N. E. (2d) 479.