G. FREDERICK TILTON v. SOUTHWEST SCHOOL
CORPORATION ET AL.

[No. 871A152. Filed April 17, 1972. Rehearing denied May 19, 1972.
Transfer denied November 14, 1972.]

*Richard J. Darko, Bingham, Summers, Welsh & Spilman,* of Indianapolis, for appellant.

*George E. Taylor, E. D. Powell, Taylor & Taylor,* of Sullivan, for appellees.

LYBROOK, J.—Plaintiff-appellant Tilton, a non-tenured teacher, brought this action for injunctive relief after appellees notified him that he would not be offered a teaching contract for the 1970-71 school year. The decision of the trial court was for the defendants (appellees) and Tilton appeals.

The evidence shows that appellant was employed as a social science teacher by the Southwest School Corporation of Sullivan County for the school year 1965-1966. He was given

a new contract as a teacher in each of the subsequent years, to and including the year 1969-1970.

Prior to coming to Southwest, Tilton had received both his Bachelor of Arts and Master of Arts Degrees and had taken about 20 additional hours of graduate work. He had taught previously at Danville (Illinois) High School and at Casey and Robinson, Illinois for an approximate total of four years before coming to Southwest. He was 60 years of age at the time of trial.

During the five years that Tilton taught at the Southwest Corporation, he spent the first three years teaching social sciences in the Junior High School and the last two years in the Social Science Department of Sullivan High School.

Defendant, Philip L. Borders, who was and had been Superintendent of the defendant school corporation since 1968, notified appellant by registered mail, under date of April 13, 1970, that the Board of School Trustees of the defendant corporation would not offer him a teaching contract for the 1970-1971 school year. The letter also notified Tilton that the contractual obligations between him and the Board of School Trustees would terminate at the end of the 1969-1970 school year.

Other defendants in this cause, in addition to the Southwest School Corporation itself, are Lee French, who was at that time, and had been since 1968, principal of Sullivan High School, and the remaining named defendants, all of whom were members of the Board of School Trustees of the Southwest Corporation in April of 1970.

Upon receipt of the above letter, Tilton, by his own letter dated April 16, 1970, requested a copy of the reasons relied upon by the board in failing to extend him another contract of employment. Then, on April 17, 1970, Tilton requested an open hearing before the members of the Board of Trustees relative to the reasons relied upon by the board. Thereafter on April 20, 1970 all of the defendants, excepting

French, sent plaintiff a letter denying his request for reasons and for a hearing. After plaintiff retained an attorney, who requested reasons and a hearing for plaintiff on April 25, 1970, defendant Borders, by letter of April 27, 1970 notified plaintiff that the Board of School Trustees stood upon their refusal to grant plaintiff a hearing and later, on May 13, 1970, in a letter signed by all of the defendants other than defendant French, the reasons for non-renewal of plaintiff's teaching contract were set forth as follows:

> "The action of the Board of School Trustees was based upon the decision that the instructional contribution made by you to the educational program was not of a quality sufficiently high to merit your continuation as a teacher in the Southwest School Corporation of Sullivan County. Further, it was determined that the educational program in the social studies area could be improved by your replacement."

On May 28, 1970 Tilton filed his complaint in the Sullivan Circuit Court, alleging among other things, his prior service as a teacher in the defendant corporation and that he had been refused a contract as a teacher for the 1970-1971 school year. Tilton further charged that the defendants had refused to grant him a hearing before refusing to extend his contract of employment as a teacher and that the action of the defendants in not renewing the contract was unreasonable, arbitrary, capricious or unlawful in that:

"(a) The plaintiff was not afforded the opportunity of a hearing as to the reason or reasons for the non renewel [sic] or termination of his teaching contract in violation of the provisions of Chapter 97 of the 1927 Acts of the Indiana General Assembly, as amended, being Section 28-4308 Burns Indiana Statutes Annotated, 1948 Replacement, as incorporation [sic] by reference by Chapter 27 of the 1939 Acts of the Indiana General Assembly, as amended.

"(b) The reason or reasons for terminating or not renewing the teaching contract of the plaintiff is in violation of the provisions of Chapter 97 of the 1927 Acts of the Indiana General Assembly, as

amended, being Section 28-4308, Burns Indiana Statutes Annotated, 1948 Replacement, as incorporated by reference by Chapter 27 of the 1939 Acts of the Indiana General Assembly, as amended.

"(c)  The written reason or reasons provided to the plaintiff by written instrument dated May 13, 1970 were not the reason or reasons for the non-renewal or termination of the plaintiff's teaching contract as stated in the written notification to plaintiff dated April 13, 1970.

"(d)  The plaintiff categorically denies each of the reason or reasons stated in the instrument of May 13, 1970, to him for the non-renewal or termination of plaintiff's teaching contract for the 1970-1971 school year.

"(e)  The non-renewal or termination of the plaintiff's teaching contract for the 1970-1971 school year is in violation of the due process clause of the 14th Amendment to the Constitution of the United States in that the plaintiff was denied a hearing on the reason or reasons for the termination or non-renewal of the plaintiff's teaching contract for the 1970-1971 school year."

Plaintiff further alleged irreparable harm as a result of the action of the defendants and prayed that they be enjoined from not renewing his contract for the 1970-1971 school year and be mandated to renew his teaching contract for the 1970-71 school year upon the same basis, salary, terms and conditions as his contract for the previous school year.

Defendants filed answer to plaintiff's complaint and the cause was submitted to the court for trial without the intervention of a jury on November 9, 1970 and concluded on November 10, 1970. On January 13, 1971 the court entered the following judgment:

"Come now again all parties herein by attorneys of record and the Court having heretofore taken ruling under advisement now finds for the defendants. [IT] IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that plaintiff take nothing by his complaint, all at plaintiff's · costs herein laid out, expended and taxed at $_____."

Appellant timely filed his Motion to Correct Errors which sets forth the following five specifications:

"1. That the decision of the Court is contrary to the evidence in that the plaintiff proved by a preponderance of the evidence that the action of the defendants was unreasonable, arbitrary and capricious, as stated more fully in plaintiff's brief in support of this motion.

"2. The decision of the Court is contrary to law in that the defendants did not comply with, nor did the Court require compliance with, the procedural protection of *Burns' Indiana Statutes Annotated, Section* 28-4511 to 28-4516 (formerly codified as Burns' 28-4307 to 28-4312) as incorporated in *Burns' Indiana Statutes Annotated,* Section 28-4517 (formerly codified as *Burns'* Section 28-4312), as more fully set out in plaintiff's brief in support of this motion.

"3. The decision of the Court is contrary to law in that the defendants did not comply with the dictates of the due process clause of the Fourteenth Amendment of the Constitution of the United States, nor did the Court require such compliance, in that the defendants did not provide a hearing to the plaintiff upon the defendants' decision to deny the plaintiff a contract of employment for the 1970-71 school year.

"4. The decision of the Court is contrary to law in that the defendants did not comply with the dictates of the due process clause of the Fourteenth Amendment of the Constitution of the United States, nor did the Court require such compliance, in that the reasons given the plaintiff for the nonrenewal of his contract were vague and ambiguous, and were not sufficiently detailed to permit the plaintiff to correct a decision made on the basis of mistaken or false facts.

"5. The decision of the Court is contrary to state law, *Burns'* 28-4517, in that the reasons given the plaintiff for the nonrenewal of his contract were vague and ambiguous, and were not sufficiently detailed to permit the plaintiff to correct a decision made on the basis of mistaken or false facts."

Hearing was duly had on the Motion to Correct Errors and the same was overruled on May 11, 1971.

We shall now proceed to consider the points raised by the appellant in the same order they were presented.

In appellant's brief (p. 12) he characterizes his first point by the following title:

"1. *The action of the defendants in denying plaintiff further employment was arbitrary, capricious and unreasonable.*"

which would lead one to believe that the above was the error complained of. However, a comparison of the above statement with the actual Specification 1 in the Motion to Correct Errors reveals a difference between the two. In the Motion to Correct Errors appellant contends "That the decision of the court is *contrary to the evidence* in that plaintiff proved by a preponderance . . . that the action of the defendants was unreasonable, arbitrary and capricious, . . ." [Emphasis supplied.]

Specification 1 seems to invite this court to weigh the evidence in the case and determine where the preponderance lies. This we cannot do.

We have completely read the transcript of the evidence but we simply must not and cannot weigh it. In *Pontius* v. *Littleton* (1970), 146 Ind. App. 369, 255 N. E. 2d 684 the court said:

"This court cannot, and will not, weigh the evidence; that was the duty of the trial court, who saw and observed the witnesses on the stand, took into consideration their truthfulness, their bias and interest in the case, and was in a better position to understand the evidence, draw inferences therefrom and determine the truth . . ."

The Court went on to say in the *Pontius* case, quoting from *Armstrong* v. *Oster* (1919), 189 Ind. 1, 123 N. E. 109, that:

" 'Where the evidence is conflicting, in determining whether a finding in favor of the appellee is warranted, only the uncontroverted facts in the evidence most favorable to appellee and favorable inferences that may be drawn therefrom can be considered on appeal.' "

It would further seem to us that where the decision of the trial court was negative in character, as it was in the instant case, that for appellant to assert that the decision of the court is contrary to the evidence raises no question on appeal. See *Hardy et al.* v. *Town of New Harmony, Indiana, et al.* (1967), 248 Ind. 350, 227 N. E. 2d 689, wherein the court said:

> "Appellants assert that the decision of the trial court is not sustained by sufficient evidence. It seems almost unecessary [sic] to state that the decision and judgment of the trial court, being negative in character, presents no question. The authorities are almost limitless in support of this proposition. *Hinds, Executor* v. *McNair, et al.* (1955), 235 Ind. 34, 129 N. E. 2d 553.
>
> "As to Appellants' second contention that the decision is contrary to law, it seems obvious that this Court will not determine that a decision of a trial court is contrary to law if indeed there is substantial probative evidence to sustain the decision."

Also, in *Cox* v. *Schlachter* (1970), 147 Ind. App. 530, 262 N. E. 2d 550, the court said:

> "In considering the sufficiency of evidence, this court will consider only that evidence most favorable to the appellees and reasonable inferences to be drawn therefrom. *Butler* v. *Forker Bd. of Comm.* (1966), 139 Ind. App. 602, 221 N. E. 2d 570. Furthermore, if there is any evidence of probative value to support the verdict or decision, it is the duty of this court to affirm. *Central Ind. Ry. Co.* v. *Mikesell* (1966), 139 Ind. App. 478, 221 N. E. 2d 192, 201; *Haley* v. *Williams, Trustee etc., et al.* (1955), 125 Ind. App. 377, 380, 381, 123 N. E. 2d 921, 922."

In determining whether the action of the appellees was arbitrary, capricious and unreasonable it might be well to consider the definition of "arbitrary and capricious" as reported in an Indiana case, *State Board of Tax Commissioners et al.* v. *Chicago, Milwaukee, St. Paul & Pacific Railroad Company* (1951), 121 Ind. App. 302, 96

N. E. 2d 279, wherein the court defined "arbitrary and capricious" as:

"... wilful and unreasonable action, without consideration and in disregard of the facts or circumstances of the case; action taken without some basis which would lead a reasonable and honest man to such action."

This seems to apply a similar test to the action of the school board as the law applies to the consideration of the decision of the trial court. The question is: "Is there evidence of probative value which would tend to substantiate the action of the Board, or of the Court, as the case may be?" If the appellee board had evidence upon which to ground its decision, it was neither arbitrary nor capricious. In like manner if the trial judge heard competent evidence upon which his decision could reasonably be based, then we cannot say he was in error.

There was evidence in this case, particularly as to evaluations of the appellant by defendant Lee French which, even standing alone, would furnish sufficient basis for both the school board and the trial court to reach their conclusion.

Language from a recent Indiana case, while not directly on point, seems to describe the relationship between the function of the board and the review of its decisions by the court. In *Tippecanoe Valley School Corp.* v. *Leachman* (1970), 147 Ind. App. 443, 261 N. E. 2d 880, it was said that:

" 'The general rule is that, where power has been conferred upon an administrative officer or board to remove another officer, a teacher, or appointee, for cause, and the procedure is provided for such removal, *and the procedure has been followed,* the finding of such administrative officer or board dismissing another officer, a teacher, or appointee, is final and conclusive and not reviewable by the courts, either in a direct proceeding to reverse or by collateral attack, *except where such administrative officer or board has acted in bad faith, corruptly, fraudulently, or has grossly abused its discretion.' "

Appellant, in his argument in Specification 1, has cited several cases, both State and Federal, as tending to support his position. Many of them are not in point, in our opinion, and others which we feel are closer to the problem will be discussed later in this opinion.

Having determined that we cannot weigh the evidence to determine where the preponderance lies and having further determined that there was *some* evidence to sustain the decision of the trial court, we find against the appellant in Specification 1 of his Motion to Correct Errors.

In Specification 2, appellant contends that plaintiff was denied a hearing as required by Indiana Statutory law. IC 1971, 20-6-13-1; Ind. Ann. Stat. § 28-4517 (Burns' 1970) reads as follows:

"Every contract of employment hereafter made by and between a teacher and a school corporation, except contracts with permanent teachers as defined in chapter 97 of the Acts of 1927 [§§ 28-4511—28-4516] and acts amendatory thereof, shall be renewed and continue in force on the same terms and for the same wages, unless increased by the provisions of chapter 101 of the Acts of 1907 and acts amendatory thereof, known as the Teachers' Minimum Wage Law, for the school year next succeeding the date of termination fixed therein unless on or before the first day of May, the teacher shall be notified by the school corporation in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for such succeeding year or unless such teacher shall deliver or mail by registered mail to such school corporation his or her written resignation as such teacher or unless such contract is superseded by another contract between the parties. Superintendents, principals, and supervisors shall be deemed to be teachers within the meaning of this act [section].

"Any teacher who shall be refused continuation of contract pursuant to the provision of this act [section] may request from the trustee or board of trustees a written statement showing reason for such dismissal.

"After August 15 any teaching contract entered into between a school corporation and a teacher shall be void if

the teacher, at the time of signing said contract, is bound by a previous contract to teach in the public schools, except that another teaching contract may be signed by a teacher to become effective on the furnishing to the township trustee or a board of school trustees of a release by the employers under the first contract, or after proof has been shown that the notice as required under this section has been given the first employers. A teacher may on twenty-one [21] days' written notice, delivered by the teacher to the school trustee or board of school trustees, or by mutual agreement in less than twenty-one [21] days be released from a teaching contract. A township or city school board may if it desires request a written statement from the teacher at the time of the signing of the contract as to whether another teaching contract has been signed by the teacher, but failure to provide the statement shall not be a cause at a later date for voiding the contract. "This act [section] shall be effective for all teachers employed in the public schools of the state of Indiana and all such teachers comprehended within the provisions of this act [section] shall be and are hereby granted all of the rights, privileges, and protections provided by this act [section] and on and after July 1, 1967, by the provisions of chapter 97 of the Acts of 1927 [§§ 28-4511—28-4516] and acts amendatory thereof the same as if they were teachers in cities and towns. [Acts 1939, ch. 77, § 1, p. 457; 1941, ch. 130, § 1, p. 369; 1965, ch. 93, § 1, p. 131.]"

In his brief, appellant contends that the last paragraph of the above section confers upon all teachers in the Indiana public schools, all the rights, privileges and protections provided by Chapter 97, Acts of 1927 (Burns' §§ 28-4511—4516), I.C. 1971, 20-6-12-1 to 20-6-12-6 and acts amendatory thereto, on and after July 1, 1967.

This is the equivalent of making every public school teacher in the State of Indiana a tenure teacher, regardless of length of service or previous contractual history of employment.

We disagree with appellant's position and would respectfully point out that in his haste to reach this untenable position, he has failed to give due consideration to the last line of the statute ". . . *the same as if they were teachers in cities and towns*." (Our emphasis.)

Appellant in his brief states that the above statute "should be construed, as are all statutes, according to the natural and most obvious import of the language employed, without resorting to strained or forced construction to limit or enlarge its operation". [Citing *State* v. *Shanks* (1912), 178 Ind. 330, 99 N. E. 481]. We agree with the above statement but are of the opinion that appellant has adopted a strained and forced construction. The *last* portion of the last sentence of the act seems to tell us, in language, loud and clear, that on and after July 1, 1967, teachers employed by townships or other school corporations, should receive the same treatment "as if they were teachers in cities and towns", intending to refer to tenured and non-tenured respectively.

A more recent Indiana case involving statutory construction is *Kewanna Water Works* v. *Indiana Employment Security Board et al.* (1961), 131 Ind. App. 400, 171 N. E. 2d 262, where it was said:

"In the construction of statutes, this court is bound by those definitions which are set out in the act and in this particular amendment, unless it appears that they are inconsistent or are repugnant to the manifest intention of the Legislature.

"In construing an Act of the Legislature, its intention from a consideration of the Act, as a whole will prevail over the literal meaning of the terms used therein. Stated differently it appears that the spirit or intention of the law prevails over the letter thereof. *Brown* v. *Grzeskowiak* (1951), 230 Ind. 110, 101 N. E. 2d 639; *Combs, Auditor et al.* v. *Cook* (1958), 238 Ind. 392, 151 N. E. 2d 144. (Numerous other cases may be cited.) It likewise has been held that in a construction of a statute, the important object is to seek, determine and carry out the purpose and intent of the Legislature, and in order to determine that aim, the language used should first be considered in its literal and ordinary signification, and, if by giving the words used such a signification, the meaning of the whole instrument is rendered doubtful, or is made to lead to contradictions or absurd results, the intent, as collected from the whole instrument, must prevail over the literal import of the terms and control the strict letter of the law. *Decatur Twp.* v. *Board of Comrs. of Marion Co.*

(1942), 111 Ind. App. 198, 39 N. E. 2d 479. *Northern Indiana R. Co.* v. *Lincoln Nat. Bank* (1910), 47 Ind. App. 98, 92 N. E. 384. (Other cases may be cited.)

"It has likewise been held that the rule of construction according to the spirit of the law is especially applicable where adherence to the letter of the law would lead to injustice, absurdity, or contradictory provisions. *City of Indianapolis* v. *Evans* (1940), 216 Ind. 555, 24 N. E. 2d 776; *Peoples Trust & Savings Bank* v. *Hennessey* (1926), 106 Ind. App. 257, 153 N. E. 507.

"Furthermore, we conclude that in the interpretation of statutes and their meaning, it is imperative that the interpreter does not twist words so as to express what he concludes should have been expressed, also, when a statute is clear and unambiguous, a court has an imperative duty not to substitute or change its meaning."

In construing this statute, a 1965 Indiana Attorney General's opinion, No. 31, stated in part:

"Your first question can be answered by stating that on and after July 1, 1967, all teachers employed by public schools, *including those employed in township school corporations, who have served in the same school corporation for five (5) or more successive years under regular contracts and thereafter enter into another regular contract with the same school corporation,* will have the rights and privileges and protections of the Ind. Acts 1927, ch. 97." [Our emphasis.]

A recent decision, handed down since the Statute was amended, while not on point, recognizes that there is a distinction between permanent teachers and non-permanent teachers. In *New Castle-Henry Twp. School Corp.* v. *Hurst* (1969), 145 Ind. App. 131, 247 N. E. 2d 835, the court said:

"Any inference which may arise from the language of the court to the effect that § 28-4321, [sic], *supra,* applies to permanent as well as non-permanent teachers is erroneous. Acts 1939, ch. 77, § 1, p. 457, as last amended by Acts 1965, ch. 93, § 1, p. 131, § 28-4321, Burns' 1968 Cum. Supp., *supra,* applies only to non-permanent teachers."

It seems obvious therefore that the legislature in amending the statute, did not intend to put every teacher on tenure.

This would do violence to all of the safeguards and protections which tenure teachers in this state have earned by long years of faithful service and now enjoy under our law.

Appellant Tilton, being a non-tenure teacher was not entitled to a hearing as a matter of right under the statute, since it makes no provision for a hearing, as we have construed it.

Appellant next contends that the Board's refusal to extend a hearing to him was in violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States and proceeds to quote from and cite many Federal cases. Many of them, while interesting, are not in point and many others are in conflict with each other but we shall proceed to discuss those cases which, in our opinion, have some bearing on the subject matter.

In the beginning we might state, as appellant concedes in his brief, that this court is not bound by these Federal precedents, even those from the 7th Circuit.

We concede that the due process clause of the Fourteenth Amendment protects all teachers who are denied employment because of their activity in exercising a constitutionally guaranteed right, such as free speech, for example. We shall not discuss these cases since they are not in point. The parties agree in the instant case that appellant Tilton was not refused further employment because he was exercising his *First* Amendment rights nor was he terminated for exercising any other right guaranteed by the Constitution.

Therefore, we shall not discuss *Pickering* v. *Board of Education* (1968), 391 U.S. 563 or *Slochower* v. *Board of Education* (1956), 350 U.S. 551, or other similar cases in the interest of brevity.

In *Johnson* v. *Branch* (1966), 364 F. 2d 177, Judge Bell of the 4th Circuit found that the Board in that case had insufficient reason for non-renewal of a non-tenured teacher's

contract. While the facts of that case are much different from the case at bar, some of the language is pertinent:

"There is no vested right to public employment. No one questions the fact that the plaintiff had neither a contract nor a constitutional right to have her contract renewed, but these questions are not involved in this case. It is the plaintiff's contention that her contract was not renewed for reasons which were either capricious and arbitrary or in order to retaliate against her for exercising her constitutional right to protest racial discrimination.

\* \* \*

"The statute gives discretion to the school board in deciding whether or not to continue the employment of a teacher. Discretion means the exercise of judgment, not bias or capriciousness. Thus it must be based upon fact and supported by reasoned analysis. In testing the decision of the school board the district court must consider only the facts and logic relied upon by the board itself. It is 'a simple but fundamental rule of administrative law \* \* \* that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside for the administrative agency.' S.E.C. v. Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 1577, 91 L. Ed. 1995 (1947). Similarly the district court may not usurp the discretionary power of the school board but must judge the constitutionality of its action on the basis of the facts which were before the Board and on its logic."

In the above case no written reasons were given the teacher for her dismissal.

*Roth* v. *Board of Regents* (1970), 310 F. Supp. 972, (Affirmed 7th Circuit), (1971), 446 F. 2d 806, deals with a non-tenured college professor at the University of Wisconsin whose contract was not renewed. The court in this opinion holding for *Roth,* also discussed the necessity for notifying

a professor in advance of the standards by which his retention or non-retention would be judged, saying this was unnecessary. No reasons were given Roth for his non-retention and the court held he was entitled to a hearing.

Appellant also cites *Chase* v. *Fall Mountain Regional School District* (N.H. Dist. 1971), 330 F. Supp. 388, and *Endicott* v. *Van Petten* (Kan. Dist. 1971), 330 F. Supp. 878. Both cases involve teachers and it is again significant to point out that in each case, as well as almost all of the other cases cited herein, the teachers were never given any explicit reasons for non-renewal.

Appellant seems to rely heavily upon the case *Shirck* v. *Thomas* (7th Cir. 1971), 447 F. 2d 1025. An examination into the facts in this case reveals that the lower court decided it by sustaining a Motion for Summary Judgment in favor of the defendant School Board. Apparently there was a meeting set up by the school authorities in this case but the evidence was conflicting as to whether or not the teacher was advised that she would be given an opportunity to be heard at this meeting. Conflicting affidavits were filed also on the question as to whether her problem had been discussed with her. Under the circumstances the court might well have been correct in reversing the cause and remanding it for further proceedings in the trial court because the facts didn't justify a summary judgment, but this case, like many other cases which appellant has cited, differs from the case at bar.

In *Shirck, supra,* there was a 2-1 decision. Judge Stevens in dissenting observed that:

"The ultimate purpose is to determine whether the administrative decision rests 'on a basis wholly inappropriate in fact or on a basis wholly without reason'.

"The source of this requirement, as well as the source of the substantivity of right itself, is unclear. It is not derived from any statute, regulation or common law rule. If it is predicated on something other than judicial fiat, the due process clause itself must perform the dual func-

tion of creating the right to be protected and also prescribing its procedural safeguards. . . ."

In *Gouge* v. *Joint School District No. 1* (W.D. Wisconsin 1970), 310 F. Supp. 984 we have before us another case which was decided on a Motion for Summary Judgment by the trial court in which the court ruled on the basis that genuine issues of material fact were present, saying:

"I conclude that summary judgment of dismissal is inappropriate because there is a genuine issue of material fact both as to identifying the reasons upon which the Board acted in each case, and as to whether there was any basis in fact for any of the reasons in either case."

The court in *Gouge, supra,* further stated that:

". . . a teacher in a public elementary or secondary school is protected by the due process clause of the Fourteenth Amendment against a non-renewal decision *which is wholly without basis in fact* and also against a decision which is wholly unreasoned, as well as a decision which is impermissibly based (such as race, religion, or exercise of First Amendment freedom of expression)." [Our emphasis.]

In *Roth, supra,* which was the forerunner of many other cases on this subject, we have another case which is not in point, since *Roth,* a University of Wisconsin professor, pleaded in his complaint that he had been vocal in expressions of opinion respecting campus disturbances and controversies and that his expressions had been critical of the university administrators and the defendant board. *Roth* further pleaded that the reason for the decision not to offer him a contract was to retaliate against him for his expressions of opinion in exercise of his freedom guaranteed by the First and Fourteenth Amendments. It is significant to point out again that he was not offered any reasons for his dismissal by the defendant.

Even under this strong set of facts Judge Duffy agreed in dissenting that:

" 'Affirmance of the judgment below . . . will constitute an unprecedented and unwise incursion of the federal courts into the domain of public higher education.' "

He also observed that the majority opinion was far beyond the present state of the law and in fact:

". . . now places this Circuit in direct conflict with two other Circuits in this area of the law."

thus illustrating the different results reached in different federal circuits even in the early stages of the development of this doctrine.

As an example of cases which are at the opposite end of the spectrum see *Freeman* v. *Gould* (1969), 405 F. 2d 1153, wherein the court said:

"We do not think it within the province of the federal court to pass upon and decide the merits of all of the internal operative decisions of a school district. However, even if we were to pass upon the merits of this issue, we do not think that we could say that the Board was capricious or arbitrary in its attempt to resolve this internal dispute between the teachers and the principal of the school. There must be some degree of harmonious cooperation in school administration to insure an efficient use of public funds and a reasonably satisfactory school program. School boards are representatives of the people, and should have wide latitude and discretion in the operation of the school district, including employment and re-hiring practices. Local autonomy must be maintained to allow continued democratic control of education as a primary state function, subject only to clearly enunciated legal and constitutional restrictions."

In *Thaw* v. *Board of Public Instruction et al.* (5th Cir. 1970), 432 F. 2d 98, the court observed that:

"It is not too much to ask that appellant allege in his complaint a possible violation of constitutional rights, if a basis for such an allegation exists." [Citing *Sindermann* v. *Perry*, (5th Cir. 1970), 430 F. 2d 939]. "It *would* be too much to ask the School Board to hold a hearing every time it determines not to renew the contract of a proba-

tionary teacher, or even every time a terminated teacher requests a hearing, without alleging unconstitutional action. . . ."

In a 1st Circuit case, *Drown* v. *Portsmouth School District et al.* (1st Cir. 1970), 435 F. 2d 1182, the court held that while reasons must be given a non-tenured public school teacher for her non-renewal, she does not have an absolute right to a hearing under the Fourteenth Amendment. The court mentions most of the cases above cited herein and very aptly describes the confusion existing by saying:

"Courts are divided on the issue of the administrative procedural rights to which a non-tenured public school teacher is entitled when he is not rehired. Some say that the teacher has no right to an administrative hearing, although he does have a legal remedy, if he was dismissed for constitutionally impermissible reasons such as his race or the exercise of First Amendment rights." [Citing *Freeman* v. *Gould, supra,* and other authorities.]

"Others have held that a non-tenured teacher is entitled to a hearing even when there is no allegation that the decision not to rehire was made for constitutionally impermissible reasons. [Citing *Roth* v. *Board of Regents, supra,* and other cases.]

"Still others have taken a middle course requiring administrative hearings only when there is an allegation that a constitutionally impermissible reason motivated the decision not to rehire." [Citing cases.]

The United States Supreme Court in the leading case of *Cafeteria & Restaurant Workers etc.* v. *McElroy* (1961), 367 U.S. 886, discusses the necessity of balancing the nature of the government function against the private interests that have been affected by it. Admittedly serious consequences could be felt by a teacher if his employment was not renewed and where there was no reason given and no apparent basis in fact. Likewise, it might unduly burden the function of our school system if, in addition to giving reasons, the Board would be required to conduct a hearing in case of non-retention in each case where the teacher demanded it.

In deciding this issue we feel we must again focus our attention upon the statute of our State (Burns' § 28-4517, *supra*) which does not require that a hearing be had for a non-tenured teacher. In our opinion the Fourteenth Amendment to the Constitution of the United States likewise does not require a hearing as a matter of right excepting cases where a constitutional right is directly involved. In examining the Federal cases it is interesting to note that in virtually none of them which held that a hearing was required, were there any reasons given for dismissal or non-retention. We feel that this distinguishes these cases from the case at bar.

While our statute requires that a written statement of the reason for dismissal be given, it does not require a hearing and for that matter the word "hearing" does not even appear in that section of the statute (Burns' § 28-4517, *supra*).

If the legislature in the exercise of its wisdom and after balancing the interests of the teacher and the school, is of the opinion that a hearing should be given, then the statute should be amended again. Who should decide if a non-tenured teacher should be guaranteed a hearing by statute? Who should decide if other persons, such as lawyers, secretaries, plumbers, salesmen, business executives, nurses and newspaper boys should have a hearing? Obviously this should be done by legislative enactment and not by the courts if one is to show any reverence and respect for the Doctrine of Separation of Powers.

We are aware that other courts have ventured "out of bounds" into the legislative domain. We will not do so.

In Specifications No. 4 and No. 5 of the Motion to Correct Errors appellant contends that the decision of the trial court is contrary to law, in that the reasons given by the appellee were so vague and ambigious that there was a resulting vio-

lation of the due process clause of the Fourteenth Amendment and also of the statute (Burns' § 28-4517, *supra*,) in that order. We shall consider these two alleged errors together.

In discussing the inadequacy of the reasons given by appellees, appellant Tilton again seems to rely principally upon a running discussion of several federal cases, hereinabove cited, many of which are not in point with the case at bar. Both parties discuss the pros and cons of the giving of detailed reasons and suggest that in weighing the respective arguments on each side that the balancing test of *Cafeteria Workers* v. *McElroy, supra,* should be applied.

Appellant again seems to rely upon many federal cases including *Roth, supra,* and *Drown, supra.* Both cases are of interest but it is significant that no reasons were given in either case to the non-tenured teacher, so they must be considered as an example of cases which are not strictly in point.

In reviewing the cases cited by the parties it becomes quite apparent that reasons given a non-tenured teacher for termination of employment in one case are never identical with the reasons given in any other case. Therefore, the balancing feat required by *Cafeteria, supra,* must of necessity differ in each case. The law has long protected tenured teachers by requiring, not only that reasons be given, but that the reasons be one of those included in the statute and that a hearing be made available. No such protection has been extended to non-tenured teachers by our Indiana Statute and in balancing the interests we assume that we would be "over balancing" if we extended to non-tenured teachers the tenured teachers' rights.

The statute (Burns' § 28-4517) reads in part as follows:

> "Any teacher who shall be refused continuation of contract pursuant to the provision of this act [section] may request from the trustee or Board of Trustees a written statement showing reason for such dismissal."

In advising the appellant of the reasons given for the non-renewal of his contract the appellees in this case stated that their action was based upon a decision that Tilton's instructional contribution to the educational program was not of the quality sufficiently high to merit his continuation as a teacher there and further that the educational program in the social studies area could be improved by his replacement.

We think the above reasons were sufficiently specific to enable the appellant to understand why he was not being retained. The above reasons, while not detailed, stated the ultimate reasons of the Board. If minute details had been given, the statement would have become more evidentiary in nature than conclusionary.

We believe the substance of the reasons given was sufficient. If, in fact, appellant's contribution as a teacher was not sufficiently high in quality and if the social studies program could be improved by employing another teacher, then these facts, if true, justified the appellee board in determining not to rehire the appellant.

It is true that we must balance the interests involved; (1) those of the teacher and (2) those of the school system which is supported by its many parents and taxpayers. Perhaps we would not be too bold in suggesting an additional group of people whose interests should be considered— the children attending Southwest School. We do not believe the interests of the children have been mentioned heretofore in this case.

In review it is of interest to observe some of the reasons in the other federal cases. In *Gouge, supra,* there was evidence that the appellant "is and has been for sometime in a relatively poor state of physical health" and that appellant "failed and evidenced inability to plan and conduct the elementary school vocal music program". The court indicated

that if the decision not to renew had been actually based on one of the above reasons, they would have been appropriate.

In *Shirck, supra,* the evidence showed that appellant failed to coordinate her teaching with that of the other German teacher so that the students who needed a transfer at the end of the semester would be handicapped. This reason was held sufficient and the case was reversed upon a different ground. In *Freeman* v. *Gould, supra,* the reasons given for the non-retention of several teachers were as follows:

"Mrs. Inez Nichols: 'bullheaded, goes to Pine Bluff without permission, old trends of teaching, don't adhere change of command' "

"Mrs. Jesse Freeman: 'incompetent, old fashion teaching methods, keep children afraid of her, disregard modern trends of teaching insubordination' "

"Mrs. Earlene Woods: 'lazy, out of class everytime I visit elementary department, incompetent and neglect night activities' "

"Mrs. Walker: 'after each payday she stays at home, no co-operation, insubordination, don't believe in change of command' "

"Mrs. Essie Calloway: 'lazy, incompetent and non-co-operative' "

"Mrs. T. N. Wilhite: 'non-co-operative, don't attend night activities, every year skin sickness, in the wrong field—Home Economics major.' "

The court found each of the above reasons sufficient.

In conclusion we are of the opinion that the reasons given by appellees to appellant Tilton were sufficient to inform him of the reason for his non-retention.

As stated previously most of the federal cases reviewed were not in point since in virtually none of those cited by appellant, were there any reasons given. Nevertheless, the language of the federal cases has been interesting to review and perhaps some day the Supreme Court of the United States will pronounce the last word on the procedural standards regarding non-retention of a non-tenured teacher. The

fact that the federal circuits themselves are in conflict makes the job more difficult.

In the meantime we conclude that no right to a hearing exists for a non-tenured teacher under Indiana Statute nor is such a right guaranteed by the due process clause of the Fourteenth Amendment, under the facts of the case at bar.

We further conclude that the decision of a school board and the decision of a trial court should not be disturbed except in cases where it is arbitrary and capricious, without reasonable basis or in direct violation of the Constitution.

We will continue to protect the established and well defined constitutional rights of all teachers, tenured and non-tenured, but will refrain from venturing into the political forum by inventing new rights, which may not be constitutional at all. Neither will we attempt to administer the schools of Indiana from this bench.

The decision of the trial court is therefore affirmed.

Robertson, P.J. and Buchanan, J., by designation, concur; Lowdermilk, J., disqualified himself and does not participate.

NOTE.—Reported in 281 N. E. 2d 117.